IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

CHARLES NEUMANN,

        Plaintiff,                  No. CIV. S-06-2874 MCE EFB P

    vs.

WARDEN MARTIN VEAL,
et al.,                          <u>ORDER AND FINDINGS
AND RECOMMENDATIONS</u>
        Defendants.
_____/

       Plaintiff is a state prisoner proceeding without counsel in an action brought under 42 U.S.C. § 1983. Defendants Veal, Cry, Silbaugh and Smith move to dismiss for failure to exhaust administrative remedies. *See* 42 U.S.C. § 1997e. Defendants Higgins and Tyler have joined in the motion. For the reasons set forth below, the court recommends that the motion be granted.

**I.    Procedural History**

       This matter proceeds on the complaint filed on December 21, 2006, in which plaintiff claims that Cry, Higgins, Silbough, Smith, Tyler and Veal maintain policies and practices that discriminate against plaintiff in access to education and work programs based on his mental health condition, they treat him differently from other mentally ill prisoners, and they expelled him from a mental health program because he refused to volunteer for a different but similar program. Compl., at 7. Initially the court dismissed the complaint with leave to amend because

1

the court could not discern the nature of plaintiff's claims. Plaintiff failed to amend, and on June 26, 2007, the action was dismissed on the ground that plaintiff failed to state a claim for relief. Order filed June 26, 2007. Plaintiff appealed, and the Ninth Circuit reversed, finding that plaintiff stated a claim for relief, and remanded with instructions that this court determine whether this action was covered in whole or in part by the class action *Coleman v. Schwarzenegger*, D.C. No. CV-90-00520 LKK (E.D. Cal.). Orders filed Nov. 6, 2007, and Feb. 21, 2008. On remand, this court ordered counsel from the Office of the Attorney General to brief this question, and after considering the response from that Office's lead counsel in *Coleman*, determined that it is not. Order filed July 10, 2008. Therefore, the court ordered that this action would proceed pursuant to the statutes and rules that govern suit brought by prisoners suing about the conditions of their confinement. *Id*.

      Having resolved the question presented by the Ninth Circuit, this court ordered service of process on all defendants. In due course, defendants Cry, Silbaugh and Veal filed a motion to dismiss on the grounds that plaintiff failed to exhaust the available administrative remedies and failed to state a claim upon which relief could be granted.[1] Defs.' Mot. to Dism., filed Aug. 4, 2008. Plaintiff failed to file an opposition or statement of no opposition to defendants' motion. Therefore, the court ordered plaintiff to respond to the motion, warning him that if he failed to do so he risked having this action dismissed. Order filed Nov. 12, 2008. Shortly thereafter, plaintiff filed a document styled, "Notice of Deficiency," explaining that he could not oppose the motion to dismiss because defendants' counsel recently had notified him that Higgins had been served, and he could not file an opposition unless Higgins joined in the motion. Pl.'s Ntc., filed Nov. 13, 2008. In response, on December 15, 2008, defendants Cry, Silbaugh, Smith and Veal requested that the court dismiss this action for plaintiff's failure to oppose their motion.

////

---

[1] At this point in the proceedings, defendants Higgins and Tyler had not yet been served.

Meanwhile, on December 19, 2008, Higgins and Tyler filed a request to join the other defendants' motion to dismiss on the ground that plaintiff failed to exhaust the available administrative remedies. Plaintiff then filed a document styled, "Objections to Motion to Dismiss," explaining why the motion to dismiss should be denied. Pl.'s Objs., filed Dec. 29, 2008. This document hereby is construed as an opposition to the motion to dismiss.

**II.    Facts**

In the December 21, 2006, complaint, plaintiff alleges that he suffers from a mental illness. He does not say what that illness is. At the time of the events upon which he bases his claims, he was housed at the California Medical Center ("CMF"). He claims that defendants Cry, Higgins, Silbaugh, Smith, Tyler and Veal, employees or officers at that facility, maintained policies and practices that discriminated against him in access to education and work programs based on his mental health condition and that they denied him adequate care. He alleged that as a result of these practices and policies, he is barred from employment and from having ten hours of support group time per week, and that he is not "able to have cell living like the other mentally ill inmates housed in the CMF." Compl., at 7. Also, he alleges that he arbitrarily has been denied appropriate mental health care. As an example, he asserts that he was expelled from the Enhanced Outpatient Program ("EOP) because he refused to volunteer for a similar mental health program. *Id.* Plaintiff seeks declaratory relief, compensatory damages and punitive damages. *Id.* at 12.

With their motion to dismiss, defendants have submitted the declaration of the current Appeals Coordinator at CMF, D. Lewis, who has examined CMF records to determine whether plaintiff submitted for review on the Second Formal Level of Review any appeals concerning the matters raised in the complaint. Lewis Decl., ¶ 1-3.[2] Attached to the declaration is a computer

---

[2] In paragraph three of the declaration, Lewis states that he has "access to the inmate appeals records of Carlos Hendon (J-62763), an inmate who was incarcerated at California Medical Facility." Throughout the remainder of the declaration, however, Lewis refers to Neumann, and the attached log of appeals reflects activity by Neumann. Plaintiff does not

3

printout of plaintiff's appeals received and processed on the First and Second Formal Levels of Review from June of 2005 through April of 2008. Lewis Decl., Attach. 1. Plaintiff submitted an appeal[3] dated May 14, 2006, designated Log No. 06-M-1181, alleging that since he refused to volunteer for a mental health program, he was being forced to move into a hostile dorm environment. *Id.* at ¶ 15. Prison officials screened out this appeal and returned it to plaintiff on May 18, 2006, because he sought to challenge an action, i.e., a housing change, which had yet to occur. *Id.* At the time they returned the appeal, they also informed plaintiff that he must submit the "CDC 128c[4] that documented his change in level of care." *Id.* On May 23, 2006, plaintiff filed a new appeal in which he asserted that he was being removed from the EOP level of care because he would not volunteer for a Department of Mental Health day treatment program. *Id.* at ¶ 16. On May 24, 2006, plaintiff resubmitted the appeal Log No. 06-M-1181 with the required documentation. *Id.* Instead of giving the May 23 appeal its own number, prison officials joined it with the appeal filed May 24 because they appeared to complain of the same action. *Id.* Prison officials responded to the consolidated appeal designated Log No. 06-M-1181 by denying it on July 21. *Id.* at ¶ 17; Lewis Decl., Attach. 1. Based on the log of plaintiff's appeals, which does not reflect any further activity on that appeal, Lewis asserts that plaintiff did not submit this appeal to the Second Level of Review. *Id.*; Lewis Decl., Attach. 1.

On August 8, 2006, plaintiff filed a new appeal complaining of his removal from the EOP level of care. *Id.* ¶ 18. He alleged that prison officials moved him to the CCCMS[5] level of care

---

dispute the facts regarding his grievances as set out by Lewis. Therefore, the court presumes that the reference to Carlos Hendon is a clerical error.

[3] Defendants do not submit copies of plaintiff's appeals. Lewis asserts that the CDCR does not retain copies of appeals that have been rejected. Lewis Decl., ¶ 13.

[4] The parties do not explain what a "CDC 128c" is..

[5] In the complaint, plaintiff explains that this refers to the "Correctional Clinical Case Management System, which is part of the CDCR's Mental Health Service Delivery System." Compl., ¶ 16.

4

because he did not volunteer for a Department of Mental health day treatment program. *Id.* Prison officials screened out this grievance because it duplicated the issues raised in Log No. 06-M-1181. Again, Lewis relies on the attached log of appeals as evidence that plaintiff did not file and pursue to the Second Formal Level of Review any other appeals about this matter before commencing this action.

Defendants also submit the declaration of T. Emigh, the Acting Chief of the Inmate Appeals Branch of the CDCR. Emigh Dec., at ¶ 1. Attached to the declaration is a computer printout of plaintiff's appeals received and processed on the Director's Level of Review between February 16, 2002, and January 18, 2008. Emigh Decl., Attach. 1. T. Emigh explains that he has searched the CDCR's database of grievances filed at the Director's Level of Review and determined that there is no record that plaintiff filed an appeal on that level concerning his removal from the EOP program. *Id.* at ¶ 6-7. Neither did he find any record that plaintiff filed an appeal about actions taken by defendants Cry, Silbaugh, Smith, Tyler or Veal in relation to plaintiff's mental health. *Id.* at ¶ 8.

In his opposition to defendants' motion to dismiss, plaintiff concedes that he did not appeal the matters alleged in the complaint to the Director's Level of Review. Dckt. 63, at 1.

**III.    Request for dismissal by Cry, Silbaugh, Smith and Veal**

As noted above, defendants Cry, Silbaugh, Smith and Veal request that this action be dismissed for plaintiff's failure to oppose their motion to dismiss. In their request, filed on December 15, 2008, these defendants point out that the court gave plaintiff 15 days to file an opposition or statement of no opposition to their motion and warned him that failure to do so would result in a recommendation that this action be dismissed. The court has the authority to dismiss an action if a plaintiff, even one proceeding without counsel, disobeys the court's orders. Local Rule 11-110; *See Ferdik v. Bonzelet*, 963 F.2d 1258, 1252 (9th Cir. 1992). However, in this case the court declines to do so. Here, plaintiff had difficulty serving Higgins and Tyler. They were not served until after the other defendants had moved to dismiss, but plaintiff

5

understood the grounds in the motion to apply to defendant Higgins. Pl.'s Ntc., filed Nov. 13, 2008. Therefore, once plaintiff learned that Higgins had been served, he felt he could not oppose the motion unless Higgins formally was a party to it. *Id.* On December 29, 2008, about ten days after Higgins requested leave to join the motion to dismiss, plaintiff filed his opposition to that motion. The court finds that plaintiff has filed an opposition and accepts it as timely filed. Therefore, the request to dismiss for failure to file an opposition to the motion to dismiss must be denied.

**IV.  Request to Join by Higgins and Tyler**

Defendants Higgins and Tyler were served with process after the other defendants because plaintiff had difficulty providing an address where they could be located. *See* Dckt. 35, 36, 56. Once they were notified of this action, however, counsel for defendants Cry, Silbaugh, Smith and Veal agreed to represent them as well. *See* Dckt. 64. Counsel already had filed the motion to dismiss on behalf of Cry, Silbaugh, Smith and Veal. Instead of filing a separate motion to dismiss duplicating the facts and argument in the one already filed, they requested permission to join in the motion made by their co-defendants.

The motion to join the motion to dismiss is a reasonable and efficient means of evaluating the defense that Higgins and Tyler seek to raise, i.e., that plaintiff failed to exhaust the available administrative remedies. Therefore, this request is granted.

**V.  Standards Applicable to the Motion to Dismiss for Failure to Exhaust**

Pursuant to the Prison Litigation Reform Act of 1995, "[n]o action shall be brought with respect to prison conditions under [42 U.S.C. § 1983], or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). This requirement is mandatory and unequivocal. *Booth v. Churner*, 532 U.S. 731, 741 (2001); *McKinney v. Carey*, 311 F.3d 1198, 1200 (9th Cir. 2002) ("Congress could have written a statute making exhaustion a precondition to judgment, but it did not. The actual statute makes exhaustion a precondition to *suit*." (citation

omitted)). A prisoner seeking leave to proceed *in forma pauperis* in an action challenging the conditions of his confinement brings an action for purposes of 42 U.S.C. § 1997e when he submits his complaint to the court. *Vaden v. Summerhill*, 449 F.3d 1047, 1050 (9th Cir. 2006). Therefore, a prisoner must exhaust available administrative remedies before filing any papers in federal court and is not entitled to a stay of judicial proceedings in order to exhaust. *Id.* at 1051; *McKinney*, 311 F.3d 1198.

The failure to exhaust nonjudicial administrative remedies as required by § 1997e(a) is not jurisdictional. *Wyatt v. Terhune*, 315 F.3d 1108, 1117 n.9 (9th Cir. 2003). Nor does § 1997e(a) require a plaintiff to plead exhaustion. *Id.* at 1119. Rather, "§ 1997e(a) creates a defense – defendants have the burden of raising and proving the absence of exhaustion." *Id.* The Ninth Circuit determined in *Wyatt* that because the defense of failure to exhaust "is not on the merits" and summary judgment "is on the merits," the defense should be treated as a matter in abatement[6] to be resolved pursuant to a motion made under "unenumerated Rule 12(b)." *Id.* The Circuit stated that "[i]n deciding a motion to dismiss for a failure to exhaust nonjudicial remedies, the court may look beyond the pleadings and decide disputed issues of fact." *Id.* at

---

[6] A "matter in abatement" is "the suspension or defeat of an action for a reason unrelated to the merits of the claim." *Andrews v. King*, 398 F.3d 1113, 1118 (9th Cir. 2005). It has its roots in the common-law "plea in abatement," abolished by Fed. R. Civ. P. 7(c). Rule 7 "unceremoniously abolishes a great deal of ancient procedural dogma that has little place in a streamlined litigation system," Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure*: Civil 3d § 1181, including pleas in abatement. *Black's Law Dictionary* 4 (6th ed. 1990). The "plea in abatement" is an archaic common law "plea which, without disputing merits of plaintiff's claim, objects to place, mode or time of asserting it. It allows plaintiff to renew suit in another place or form, or at another time, and does not assume to answer an action on its merits, or deny existence of a particular cause of action on which plaintiff relies." *Black's Law Dictionary* 1151 (6th ed. 1990). The Advisory Committee Notes to Rule 7(c) state that all statutes using the word "plea" are "modified in form by this rule." Thus, for example, the Revision Notes to 28 U.S.C. § 2105 (West 2006), which prohibits reversal of a District Court's ruling on non-jurisdictional "matters in abatement" in the Supreme Court and Circuit Courts of Appeals states, "Rule 7(c) of the Federal Rules of Civil Procedure abolished all pleas, and the rules adopted the motion as a substitute therefor. The words 'matters in abatement' were, therefore substituted for the abolished 'plea in abatement' and 'plea to the jurisdiction.'" Modernly, a party makes a motion under Rule 12 or Rule 41, as appropriate, instead of making a plea in abatement. *See Black's Law Dictionary* 4, 1151-1152 (6th ed. 1990) ("abatement of action," and "plea in abatement").

1119-20.

The United States Supreme Court expressly stated in *Jones v. Bock*, 549 U.S. 199, 216 (2007), that failure to exhaust under the PLRA is an affirmative defense. It also stated that if the affirmative defense can be decided on the pleadings alone, a motion under Rule 12(b)(6) is appropriate. *Id.* at 215. The Court analogized to a motion to dismiss based on a statute limitations defense and stated:

> A complaint is subject to dismissal for failure to state a claim if the allegations, taken as true, show the plaintiff is not entitled to relief. If the allegations, for example, show that relief is barred by the applicable statute of limitations, the complaint is subject to dismissal for failure to state a claim; that does not make the statute of limitations any less an affirmative defense, see Fed. Rule Civ. Proc. 8(c). Whether a particular ground for opposing a claim may be the basis for dismissal for failure to state a claim depends on whether the allegations in the complaint suffice to establish that ground, not on the nature of the ground in the abstract.

*Id*.

But, even when they are not addressed to the merits affirmative defenses which require the presentation of evidence outside the pleadings (including failure to exhaust as required by 42 U.S.C. § 1997e(a)) are properly considered on summary judgment, with disputed material factual issues reserved for resolution through credibility determinations as to the live testimony of the conflicting witnesses.[7] Fed. R. Civ. P. 12(d) (where a party presents affidavits or other matters outside the pleadings in support of its motion, the court must treat the motion "as one for summary judgment under Rule 56"), 56(b); *Panero v. City of North Las Vegas*, 432 F.3d 949,

////

////

---

[7] As discussed above, the reasoning in *Wyatt* for adhering to Rule 12(b) appears to have been that frequently a motion for "summary judgment is on the merits," and a failure to exhaust is independent of the substantive claims before the court. *Wyatt*, 315 F.3d at 1119. But, a motion asserting an affirmative defense, even when it does not address the merits of the substantive claims, should be brought under Rule 56 if the motion relies upon matters extrinsic to the complaint to establish the factual predicate for the defense. Motions challenging exhaustion of administrative remedies frequently rely on declarations and exhibits that are extrinsic to the complaint.

952 (9th Cir. 2005).[8] The Court in *Jones* made clear that, "beyond the departures specified by the PLRA itself," nothing in the PLRA suggests that usual procedural practices should not be followed and noted that departures from the usual procedural requirements are to be expressly made by Congress. *Jones*, 549 U.S. at 212, 214-16. Additionally, the Ninth Circuit recognized in *Wyatt* that when the district court looks beyond the pleadings to a factual record, which commonly occurs in deciding an exhaustion motion, the court must do so under "a procedure closely analogous to summary judgment." *Wyatt*, 315 F.3d at 1119, n.14.

Thus, whether a motion for failure to exhaust under the PLRA may be raised under Rule 12 or Rule 56 is not determined by whether the defense asserted in the motion goes to the "merits" of the claim. Regardless of whether judgment is sought on the merits or whether the motion seeks to bar consideration of the merits based on a technical ground that precludes reaching the merits (i.e., exhaustion, issue or claim preclusion, a statute of limitations, etc.), the determining factor is whether the factual predicate for the motion is based on the text of the pleading or instead depends upon evidence submitted with the motion. *See Jones*, 549 U.S. at 215 ("A complaint is subject to dismissal for failure to state a claim if the allegations, taken as true, show the plaintiff is not entitled to relief.").

Here, defendant's motion necessarily requires the court to consider the affidavits and exhibits presented for the purpose of proving the absence of exhaustion. Notwithstanding the

---

[8] Several other Circuits have applied summary judgment principles when the defense of failure to exhaust cannot be decided on the pleadings. *See Brownell v. Krom*, 446 F.3d 305, 310 (2d Cir. 2006) (addressing exhaustion at summary judgment); *Williams v. Beard*, 482 F.3d 637, 639 (3d Cir. 2007) (reversing grant of summary judgment on exhaustion and remanding for further proceedings); *Hinojosa v. Johnson*, 277 Fed. Appx. 370, 379-80 (5th Cir. May 1, 2008) (addressing exhaustion at summary judgment); *Foulk v. Charrier*, 262 F.3d 687, 697-98 (8th Cir. 2001) (reviewing evidence elicited at trial as to whether prisoner exhausted available remedies); *Fields v. Okla. State Penitentiary*, 511 F.3d 1109, 1112 (10th Cir. 2007) (addressing exhaustion at summary judgment); *but see Bryant v. Rich*, 530 F.3d 1368 (11th Cir. 2008) (finding that PLRA exhaustion should be treated as a matter in abatement and should be decided on a Rule 12(b) motion, even when factual disputes exist); *Pavey v. Conley*, 544 F.3d 739 (7th Cir. 2008) (rejecting the summary judgment and the Rule 12(b) approaches to PLRA exhaustion and instead determining that once a PLRA exhaustion defense is raised, a special evidentiary hearing should be held to address that defense before litigation on the merits proceeds).

analysis above, the court recognizes that *Wyatt* is controlling in these circumstances and that the instant motion is properly construed as an "unenumerated" Rule 12(b) motion to dismiss. Accordingly, the court analyzes the motion, as *Wyatt* suggests, under a standard "closely analogous to summary judgment." 315 F.3d at 119, n.15. If, under that standard, the court concludes that the prisoner has failed to exhaust administrative remedies, the proper remedy is dismissal without prejudice. *Id.* at 1119-20.

## VI. Summary Judgment Standards

Under Rule 56, resolution of the exhaustion issue in favor of defendants is appropriate when it is demonstrated that there is "no genuine issue as to any material fact" over the question. Fed. R. Civ. P. 56(c). The principal purpose of Rule 56 is to isolate and dispose of factually unsupported claims or defenses. *Celotex Cop. v. Catrett*, 477 U.S. 317, 323-24 (1986). Thus, the rule functions to"'pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial.'" *Matsushita*, 475 U.S. at 587 (quoting Fed. R. Civ. P. 56(e) advisory committee's note on 1963 amendments). Under summary judgment practice, the moving party bears the initial responsibility of presenting the basis for its motion and identifying those portions of the record, together with affidavits, that it believes demonstrate the absence of a genuine issue of material fact. *Celotex*, 477 U.S. at 323; *Devereaux v. Abbey*, 263 F.3d 1070, 1076 (9th Cir.2001) (*en banc*). If the moving party meets its burden with a properly supported motion, the burden then shifts to the opposing party to present specific facts that show there is a genuine issue for trial. Fed.R.Civ.P. 56(e); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Auvil v. CBS "60 Minutes"*, 67 F.3d 816, 819 (9th Cir.1995).

For the opposing party to establish a genuine issue of fact the factual dispute must meet two requirements. First, the dispute must be over a fact(s) that is material, i.e. one that makes a difference in the outcome of the case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. at 248 ("Only disputes over facts that might affect the outcome of the suit under the governing law will

properly preclude the entry of summary judgment."). Whether a factual dispute is material is determined by the substantive law, which here involves the question of whether plaintiff has met the exhaustion requirement. *Id. (*"As to materiality, the substantive law will identify which facts are material.")

Second, the dispute must be genuine. In this regard, the court must focus on which party bears the burden of proof on the factual dispute in question. Where the opposing party bears the burden of proof on the issue in dispute, conclusory allegations, unsupported by factual material, are insufficient to defeat the motion. *Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir.1989). Instead, the opposing party must, by affidavit or as otherwise provided by Rule 56, designate specific facts that show there is a genuine issue for trial. *Anderson*, 477 U.S. at 249; *Devereaux*, 263 F.3d at 1076. More significantly, to demonstrate a genuine factual dispute the record relied on by the opposing party must be such that a fair-minded jury "could return a verdict for [him] on the evidence presented." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. at 248, 252. If the evidence presented could not support a judgment in that party's favor, there is no genuine issue. *Id.*; *Celotex Corp. v. Catrett*, 477 U.S. at 323.

Thus, Rule 56 serves to screen cases lacking any genuine dispute over an issue that affects the outcome of the case.

On April 9, 2008, the court advised plaintiff of the requirements for opposing a motion pursuant to Rule 56 of the Federal Rules of Civil Procedure. *See Rand v. Rowland*, 154 F.3d 952, 957 (9th Cir. 1998) (en banc), *cert. denied*, 527 U.S. 1035 (1999), and *Klingele v. Eikenberry*, 849 F.2d 409 (9th Cir. 1988).

**VII. Analysis**

As noted above, defendants contend that there is no evidence that plaintiff exhausted the available administrative remedies. Plaintiff agrees that he did not file any grievance on the Director's Level of Review about the matters contained in the complaint. He claims that defendant Higgins interfered with his ability to exhaust and that in any event the legal intricacies

11

of exhaustion are too difficult for him to litigate on his own. The Ninth Circuit has yet to decide whether prison officials' interference with the appeals process can render it unavailable. However, other Circuit Courts have addressed the question and held that when prison officials prevent exhaustion through misconduct, the prisoner has satisfied the requirements of 42 U.S.C. § 1997e. *See e.g.*, *Moore v. Bennette*, 517 F.3d 717, 725 (4th Cir.2008) ("[A]n administrative remedy is not considered to have been available if a prisoner, through no fault of his own, was prevented from availing himself of it."); *Aquilar-Avellaveda v. Terrell*, 478 F.3d 1223, 1225 (10th Cir. 2007) (Courts are "obligated to ensure any defects in exhaustion were not procured from the action of inaction of prison officials."); *Kaba v. Stepp*, 458 F.3d 678, 684 (7th Cir.2006) ("Prison officials may not take unfair advantage of the exhaustion requirement, [ ] and a remedy becomes 'unavailable' if prison employees do not respond to a properly filed grievance or otherwise use affirmative misconduct to prevent a prisoner from exhausting").

Here, defendants' evidence shows that on May 14, 2006, plaintiff filed a grievance containing allegations about being removed from the EOP level of care, but prison officials rejected the appeal on the ground that the change had yet to occur. At the time, plaintiff was informed about how he could proceed with the matter, and plaintiff followed their instructions. He also filed a separate appeal that raised the same or similar concerns as the May 14 grievance, with the result that the grievances were consolidated. Defendants' evidence shows that prison officials responded to this consolidated appeal on July 21, but they do not explain the disposition in any detail. The evidence only shows that it was "denied," and that there is no record that plaintiff appealed beyond the First Formal level of Review.

For his part, plaintiff argues that his ability to exhaust "was chilled and/or blocked with rejection after rejection! These rejected administrative remedies centered around defendant 'Higgins-Niles.'" Pl.'s Objs., filed Dec. 29, 2008, at 2. Defendant Higgins is a psychiatrist at CMF. Compl. ¶ 15. If this defendant did something to prevent the proper filing of an administrative appeal, then the evidence in support of plaintiff's failure to exhaust is inapposite

12

because there would be no record of the appeal having been filed. However, plaintiff does not allege any specific facts or submit any documentary evidence, such as a written request for confirmation that his appeal was filed, which would suggest that plaintiff submitted an appeal to the Director's Level of Appeal. Neither does he allege any specific facts of what Higgins did to block his attempts to exhaust. Therefore, there is no genuine dispute about whether plaintiff complied with the rules of the CDCR so as to satisfy the exhaustion requirement. Defendants' motion on this ground must be granted.

**VIII. Conclusion**

For the reasons explained above, the request to dismiss for plaintiff's failure to file an opposition to the motion to dismiss must be denied, and defendants' Tyler and Higgins' request to join the motion to dismiss filed on behalf of the other defendants is granted. The court finds that plaintiff failed to exhaust the available administrative remedies. Having found that plaintiff failed to exhaust, the court finds that there is no reason to revisit the question of whether he has stated a claim for relief.

Accordingly, it is ORDERED that:

1. The December 15, 2008, request for dismissal for failure to file an opposition is denied; and

2. The December 19, 2008, request to join the motion to dismiss is granted.

Further, it is hereby RECOMMENDED that:

1. Defendants' August 4, 2008, motion to dismiss, construed as a motion for summary judgment, be granted;

2. Judgment be entered in defendants' favor; and,

3. The Clerk be directed to close this case.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). Within 14 days after being served with these findings and recommendations, any party may file written objections

with the court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." Failure to file objections within the specified time may waive the right to appeal the District Court's order. *Turner v. Duncan*, 158 F.3d 449, 455 (9th Cir. 1998); *Martinez v. Ylst*, 951 F.2d 1153 (9th Cir. 1991).

Dated: March 13, 2009.

EDMUND F. BRENNAN
UNITED STATES MAGISTRATE JUDGE